IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOBBY MACOMBER | ) CIVIL NO. 07-00552 DAE-KSC |
| | ) |
| Petitioner, | ) FINDINGS AND |
| | ) RECOMMENDATION TO DENY |
| vs. | ) PETITIONER'S AMENDED |
| | ) HABEAS CORPUS PETITION |
| DARREN SWENSON, Warden, | ) |
| Saguro Correctional | ) |
| Facility, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION TO DENY
PETITIONER'S AMENDED HABEAS CORPUS PETITION

Before the Court, pursuant to a referral under

Local Rule 72.5 of the Local Rules of Practice of the

United States District Court for the District of Hawaii

("Local Rules") and 28 U.S.C. § 636(a), is Petitioner

Bobby Macomber's ("Macomber") Amended Habeas Corpus

Petition under 28 U.S.C. § 2254 ("Amended Petition"),

filed December 3, 2007.  Macomber concurrently filed a

Memorandum of Law and Argument in Support of Amended

Petition for Writ of Habeas Corpus Under 28 U.S.C.

§ 2254.  On February 15, 2008, Respondent Darren

Swensen ("Respondent") filed an Answer to the Petition.

Macomber filed a Reply on September 16, 2009.[1]  After
careful consideration of the Amended Petition and the
supporting and opposing memoranda, the Court hereby
FINDS and RECOMMENDS that the Amended Petition be
DENIED for the reasons set forth below.

<u>BACKGROUND</u>[2]

On April 26, 2005, the Circuit Court of the
Third Circuit ("circuit court") entered judgment in
Macomber's state criminal proceeding, Crim No. 03-1-
0286K.  Macomber was found guilty by jury trial of
first degree burglary, in violation of Hawaii Revised
Statutes ("HRS") § 708-810, first degree robbery, in
violation of HRS § 708-840, third degree theft, in
violation of HRS § 708-832, kidnapping, in violation of
HRS § 707-720, use of a firearm in the commission of a

---

[1]  The Reply was untimely.  The Court ordered
Macomber to file a Reply by September 14, 2009.
However, in exercising its discretion, the Court will
consider the Reply in rendering a decision.

[2]  The facts herein are taken from the Petition,
Amended Petition, and from <u>State v. Macomber</u>, No.
27320,  147 P.3d 841, 2006 WL 3262546 *unpub.* (Haw.,
Nov. 13, 2006).

felony, in violation of HRS § 134-6(a), and impersonating a law enforcement officer in the first degree, in violation of HRS § 710-1016.6.

Macomber appealed his conviction and on November 13, 2006, the Hawaii Supreme Court affirmed. On appeal, Macomber argued that: 1) the circuit court failed to determine whether statements that he made while in police custody were voluntary; and 2) even if the circuit court concluded that his statements were voluntary, whether its conclusion was erroneous insofar as (a) the police violated HRS § 803-9(2) by refusing to accommodate his request for counsel, (b) his fifth amendment rights were violated because he was questioned while being held in the cell block without proper Miranda warnings, and (c) he was effectively denied his right to counsel when the police interrogated him outside of his counsel's presence. State v. Macomber, 2006 WL 326546, at *1.  Macomber did not seek certiorari from the U.S. Supreme Court, nor has he filed any state post-conviction petition.

On November 6, 2007, Macomber filed his initial petition for writ of habeas corpus, wherein he raised three grounds for relief.

On November 9, 2007, the Court issued an Order Dismissing Petition.

On December 3, 2007, Macomber filed his Amended Petition, setting forth two grounds for relief.  First, Macomber alleges that the circuit court erred when it failed to determine whether statements he made while in police custody were voluntary, thus violating his right to due process (Ground One).  Macomber raised this claim on direct appeal.

Second, Macomber claims that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated when the police questioned him without proper Miranda warnings, and after he had requested counsel (Ground Two).  Although this claim was raised on direct appeal, in the state courts Macomber also alleged that the police violated HRS § 803-9(2) by refusing his request for

4

counsel.

## STANDARD OF REVIEW

When a court issues a writ of habeas corpus, it declares that the petitioner is being held in custody in violation of his constitutional or other federal rights.  28 U.S.C. § 2254(a); Harvest v. Castro, 531 F.3d 737 (9th Cir. 2008).  Thus, to obtain habeas corpus relief, a petitioner must demonstrate that his conviction or punishment violates the federal constitution, a federal statute, or a treaty.  28 U.S.C. § 2241(c)(3); Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995); see also Morris v. Ylst, 447 F.3d 735 (9th Cir. 2006).

All federal habeas petitions filed after April 24, 1996, are governed by The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  Woodford v. Garceau, 538 U.S. 202, 204 (2003); Brown v. Farwell, 525 F.3d 787, 792 (9th Cir. 2008). Under AEDPA, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state

court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 402-04 (2000).

A decision is contrary to federal law if the state court applies a rule of law that contradicts Supreme Court precedent, or if the state court makes a determination contrary to a Supreme Court decision on materially indistinguishable facts.  Brown, 525 F.3d at 792.  A state court unreasonably applies federal law when its application of Supreme Court precedent to the facts of a petitioner's case is objectively unreasonable.  Id. at 793 (citation omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence

6

to the contrary." Cooper v. Brown, 510 F.3d 870, 919
(9th Cir. 2007) (quoting Miller-El v. Cockrell, 537
U.S. 322, 340 (2003)); see also 28 U.S.C.
§ 2254(e)(1)).

        Clear and convincing evidence under § 2254(e)
"requires greater proof than preponderance of the
evidence" and must produce "an abiding conviction" that
the factual contentions being advanced are "highly
probable." Cooper, 510 F.3d at 919 (quoting
Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir.
2004)). The presumption of correctness applies not
only to express findings of fact, but also applies
equally to unarticulated findings that are necessary to
the state court's conclusions of mixed questions of
fact and law. Id. (citing Marshall v. Lonberger, 459
U.S. 422, 433 (1983) (holding it proper to apply this
presumption to a credibility determination which was
implicit in the rejection of a defendant's claim)).
Where there are two permissible views of the evidence,
a fact finder's choice between them cannot be clearly

erroneous.  Id. (citing Amadeo v. Zant, 486 U.S. 214,
226 (1988)).

DISCUSSION

A.  Exhaustion

       Respondent argues that Macomber has not
exhausted state remedies.  The Court disagrees.  Before
a state petitioner may bring a habeas petition to
federal court, all of the claims raised must be
exhausted in the state courts.  28 U.S.C. § 2254(b)(1);[3]
Picard v. Connor, 404 U.S. 270, 275 (1971).  To do so,
a petitioner must present his claims to the highest

---

       [3] An application for a writ of habeas corpus shall
not be granted unless it appears that:

               (A) the applicant has exhausted the
               remedies available in the courts of the
               State; or

               (B)(i) there is an absence of available
               State corrective process; or

               (ii) circumstances exist that render such
               process ineffective to protect the rights
               of the applicant.

28 U.S.C. § 2254(b)(1).

state court, to give that court a fair opportunity to
rule on the merits of each and every issue sought to be
raised in the federal court.  See O'Sullivan v.
Boerckel, 526 U.S. 838, 839-40 (1999); Granberry v.
Greer, 481 U.S. 129, 133-34 (1987); Galvan v. Alaska
Dep't of Corr., 397 F.3d 1198, 1201-02 (9th Cir. 2005).
A petitioner may present his claims either on direct
appeal or in state collateral proceedings.  See Turner
v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987).

     To fully exhaust federal claims in the state
court, petitioners must alert, or "fairly present"
their claims as federal as well as state claims.
Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan
v. Henry, 513 U.S. 364, 365-66 (1995)); Fields v.
Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005); Lyons
v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), as
modified by 247 F.3d 904 (9th Cir. 2001).  This
"give[s] the State the opportunity to pass upon and
correct alleged violations of its prisoners' federal
rights[,]" in the first instance.  Duncan, 513 U.S. at

365.

          To fairly present a claim, a petitioner must

make its federal basis explicit, either by referring to

specific provisions of the federal constitution or

statutes, or by citing to federal case law.  Lyons, 232

F.3d at 668, 670 (general reference to insufficiency of

evidence, right to be tried by impartial jury and

ineffective assistance of counsel lacked the

specificity and explicitness required to present a

federal claim).  This level of explicitness is required

even if the federal basis of a claim is "self-evident."

Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999).

"[F]or purposes of exhaustion, a citation to a state

case analyzing a federal constitutional issue serves

the same purpose as a citation to a federal case

analyzing such an issue."  Peterson v. Lampert, 319

F.3d 1153, 1158 (9th Cir. 2003); see also Lyons, 232

F.3d at 670 n.3 (noting that a third possibility for

exhausting state remedies besides referencing specific

provisions of federal constitution or statutes or cite

to federal case law is to cite pertinent state case law explicitly applying federal law).

It is not enough to make a general appeal to a constitutional guarantee such as "due process" or "equal protection." <u>Gray v. Netherland</u>, 518 U.S. 152, 163 (1996); <u>Shumway v. Payne</u>, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" is insufficient to present federal claim); <u>see also</u> <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). Exhaustion demands more than a citation to a general constitutional provision, "detached from any articulation of the underlying federal legal theory." <u>Castillo v. McFadden</u>, 399 F.3d 993, 1003 (9th Cir. 2005).

If available state remedies have not been exhausted as to all claims, the district court must dismiss the petition. <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982); <u>Guizar v. Estelle</u>, 843 F.2d 371, 372 (9th

Cir. 1988).   A district court may raise a failure to

exhaust *sua sponte*.   <u>Stone v. San Francisco</u>, 968 F.2d

850, 856 (9th Cir. 1992).

Macomber fully exhausted Ground One.   He

presented this claim on direct appeal.   Although he did

not expressly argue, on appeal, that the circuit

court's purported failure to determine the

voluntariness of his statement violated his Due Process

rights, his citation to HRS § 621-26 and <u>State v.</u>

<u>White</u>, 1 Haw. App. 221, 617 P.2d 98 (1980) suffices to

satisfy the requirement that he present his claim as a

federal as well as a state law claim.   <u>Peterson</u>, 319

F.3d at 1158; <u>see also</u> <u>Lyons</u>, 232 F.3d at 670 n.3.   In

<u>White</u>, the Hawaii Intermediate Court of Appeals

explained that HRS § 621-26 codifies the due process

requirements set forth in <u>Jackson v. Denno</u>, 378 U.S.

368 (1964).[4]   1 Haw. App. at 222, 617 P.2d at 100.

_____

[4]   The <u>Jackson</u> Court held that "the failure to
conduct a hearing into the voluntariness of a
defendant's confession was a denial of due process in
violation of the Fourteenth Amendment of the United
States Constitution."   1 Haw. App. at 222, 617 P.2d at

Furthermore, in addressing Macomber's appeal, the Hawaii Supreme Court relied on <u>White</u>.

Similarly, Macomber has fully exhausted his claim that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated when the police questioned him without proper <u>Miranda</u> warnings, and after he had requested counsel.  Macomber raised this claim on direct appeal and presented it as a federal and state law claim.

B.   <u>Merits of Macomber's Claims</u>

    1.   <u>The State Court Made a Determination Regarding the Voluntariness of Macomber's Statement</u>

Macomber claims that the circuit court's failure to determine the voluntariness of his statements, made while in police custody, violated his Due Process Rights.  Macomber asserts that the Order Granting Motion to Determine Voluntariness of Defendant's Statements ("Voluntariness Order"), filed

---

100.

on January 31, 2005, did not determine whether he voluntarily made statements in police custody. Macomber thus believes that the circuit court judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  In support of his argument, Macomber cites the Voluntariness Order, which concluded that "the State's Motion to Determine Voluntariness of Defendant's Motion [sic] is granted."  (Answer, Ex. 3.) Macomber insists that the Voluntariness Order, which he characterizes as a "one sentence order," failed to demonstrate that the circuit court looked at the relevant facts surrounding the custodial interrogation. (Reply at 4.)  The Court disagrees.

A review of the Voluntariness Order and the record before the Court does not support Macomber's position.  Although the circuit court's Voluntariness Order lacked detail, it is apparent that the circuit court considered all of the evidence presented by both parties before granting the State's motion.  Indeed, as

14

memorialized in the Voluntariness Order, the circuit court held two hearings concerning this matter, and reviewed the records and file before granting the State's motion.  (Answer, Ex. 3.)  To say that the circuit court failed to make a determination is absurd, in light of this compelling evidence to the contrary. This Court, like the Hawaii Supreme Court, finds that the circuit court made a determination regarding the voluntariness of Macomber's statement by issuing the Voluntariness Order.  Therefore, the Voluntariness Order and subsequent supreme court holding did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Consequently, the Court recommends that the district court DENY the Amended Petition with respect to Ground One.

2.   <u>The Police did not Violate Macomber's
     Constitutional Rights</u>

Macomber broadly argues that police officers performed a custodial interrogation without ever reciting <u>Miranda</u> rights and that by failing to provide Macomber counsel after he so requested, the officers violated his right to counsel.  The Court disagrees.

On October 6, 2003, police arrested Macomber at his residence and Detective William Gary Souther advised Macomber of his <u>Miranda</u> rights.  (Answer, Ex. 3, 11/29/04 Tr. at 6:5-15.)  Macomber invoked his right to remain silent and requested an attorney.  (<u>Id.</u> at 6:16-19; 16:9-20.)  Macomber remained in custody on October 6 but was not questioned by the police.  (<u>Id.</u> at 10:5-9.)

On October 7, 2003,[5] a search warrant unrelated to the crime for which Macomber was arrested was obtained for Macomber's residence, vehicle, and person. (<u>Id.</u> at 7:25; 8:1-2; 17:12-18.)  In attempting to

---

[5]  Macomber erroneously includes the year 2004 when referring to October 7.

16

execute the search warrant, Detective Souther requested buccal swabbings from Macomber.  (<u>Id.</u> at 6:24-25; 7:1-2.)  Detective Souther did not readminister <u>Miranda</u> warnings at the time he made first made contact with Macomber on October 7.  (<u>Id.</u> at 18:1-4.)  Macomber did not cooperate when first informed about the search warrant and requested attorney Rick Gregg.  (<u>Id.</u> at 7:5-19.)  Detective Souther contacted Mr. Gregg, informed him of the warrant, and permitted Macomber to speak to Mr. Gregg by phone in his cellblock.  (<u>Id.</u> at 7:15-19; <u>see also</u> <u>id.</u> at 24:14-16) (Macomber was allowed to speak to Mr. Gregg on October 7, 2003 "[t]he minute he asked for him.").[6]

---

[6]  The record is slightly unclear as to when Macomber had contact with his attorney Rick Gregg.  On direct examination at the November 29, 2004 hearing, Detective Souther testified that after he attempted to execute the search warrant for buccal swabbings on October 7, 2003, Macomber requested attorney Mr. Gregg and Detective Souther thereafter contacted Mr. Gregg and allowed Macomber to speak to Mr. Gregg by phone in the cellblock.  (Answer, Ex. 3, 11/29/04 Tr. at 7:5-19.)  This is confirmed on redirect when Detective Souther testified that Macomber was allowed to speak to Mr. Gregg the minute he asked for him.  (<u>Id.</u> at 24:14-16.)  Macomber repeatedly argues that the officers

17

After speaking to Mr. Gregg, Macomber persisted in refusing to comply with the search warrant. Detective Souther consequently enlisted the assistance of Lieutenant Henry Hickman to persuade Macomber to submit to the search. (<u>Id.</u> at 8:11-14.)  Lt. Hickman initially communicated with Macomber for the sole purpose of convincing Macomber to submit to the search warrant, i.e. buccal swabbings. (<u>Id.</u> at 8:15-17.) During the course of this discussion, Macomber initiated further communication with Lt. Hickman concerning the arrest, investigative, and bail processes. (<u>Id.</u> at 8:19-25; 9:1-3; 23:12-24; 24:4-13.)

---

violated his right to counsel but does not acknowledge that he was given the opportunity to communicate with Mr. Gregg after Detective Souther approached Macomber about the search warrant but before Lieutenant Henry Hickman spoke to Macomber. On cross examination, the line of questioning appears to indicate that Macomber was not provided with counsel even after Lt. Hickman spoke to him (and Macomber has so argued). (<u>Id.</u> at 18.) Yet later questioning on cross confirms that Macomber did communicate with Mr. Gregg. (<u>Id.</u> at 20:24-25; 21:1-11.) Despite this slight discrepancy, it appears that Macomber requested and was provided with counsel shortly after Detective Souther confronted him with the search warrant, but before his contact with Lt. Hickman.

At no point did Lt. Hickman or Detective Souther request that Macomber make a statement.  (Id. at 9:8-12.)  Instead, Macomber agreed to the buccal swabbings then said he had information about the assault and that he would explain word for word what occurred.  (Id. at 9:18-21.)  Macomber reiterated several times that he wanted to give a statement.  (Id. at 10:13-15.)

After Detective Souther and Lt. Hickman obtained Macomber's buccal swabbings, Detective Souther advised Macomber of his Miranda rights for the second time following his arrest on October 6 using an advice of rights form.  (Id. at 10:17-19; 11:9-25; 12:1-5; 13:3-10.)  On the form, Macomber initialed "yes" when asked if he understood his rights; "no" when asked if he wanted a lawyer; "yes" when asked if he was willing to answer questions and make a statement; and "no" when asked if he wanted a lawyer during the interview.  (Id. at 13:11-24; Answer, Ex. 1.)  During the interview, Lt. Hickman confirmed with Macomber that Lt. Hickman did not coerce Macomber into making a statement and at no

19

time during the interview did Macomber request counsel.
(Answer, Ex. 3, 11/29/04 Tr. at 14:16-21; 15:11-13.)

After carefully reviewing the record, the Court finds that the police advised Macomber of his _Miranda_ rights on October 6, 2003; their contact with Macomber regarding the search warrant for buccal swabbings was not a custodial interrogation; Macomber communicated with his attorney on October 7; and he voluntarily made incriminating statements after being advised of his _Miranda_ rights again on October 7, 2003, and waiving said rights.

a.   The Police Advised Macomber of His _Miranda_ Rights on October 6, 2003

Macomber's contention that the police failed to administer _Miranda_ warnings is without merit and contradicted by the record.  Detective Souther administered _Miranda_ warnings on October 6 at the time of Macomber's arrest.  Macomber invoked his right to remain silent and was not subjected to any further questioning.  Therefore, the Court finds that Detective Souther did not violate Macomber's _Miranda_ rights on

20

October 6.

### b. Execution of the Search Warrant was not a Custodial Interrogation

Because of his erroneous belief that he was not Mirandized on October 6, Macomber alleges that he was subjected to a custodial interrogation in violation of his Miranda rights on October 7.  The evidence demonstrates otherwise.

Detective Souther made contact with Macomber on October 7 for the purpose of executing the search warrant that was unrelated to Macomber's arrest. Detective Souther's failure to readminister Miranda warnings at that time was inconsequential because 1) he and Lt. Hickman communicated with Macomber only for the purpose of executing the search warrant and did not interrogate Macomber and 2) the Miranda warnings administered on October 6 had not become stale.

A suspect's Miranda rights are ordinarily triggered during custodial interrogation.[7]  United

---

[7]  That Macomber was in custody is not in dispute. Therefore, the Court limits its inquiry to whether the

States v. Hernandez, 476 F.3d 791, 796 (9th Cir. 2007)
(citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)).
Interrogation is defined as express questioning by the
police, or "any words or actions on the part of the
police (other than those normally attendant to arrest
and custody) that the police should know are reasonably
likely to elicit an incriminating response from the
suspect." United States v. Padilla, 387 F.3d 1087,
1093 (9th Cir. 2004) (quoting Rhode Island v. Innis,
446 U.S. 291, 300-01 (1980)); Hernandez, 476 F.3d at
796. An incriminating response is "any response –
whether inculpatory or exculpatory – that the
*prosecution* may seek to introduce at trial." Padilla,
387 F.3d at 1093 (quoting Rhode Island, 466 U.S. at 301
n.5).

As already discussed, Detective Souther advised
Macomber of his rights on October 6, thus satisfying
any Miranda requirements that would be implicated. In
any event, Detective Souther's contact with Macomber on

_____

police interrogated Macomber.

October 7 did not amount to an interrogation.  First, and most importantly, Detective Souther's contact with Macomber was for the purpose of executing the search warrant for the buccal swabbings and his conduct was not unreasonable.  <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1349 (10th Cir. 1997)  (Officers have discretion over the details of how to best proceed with a search warrant's execution as long as the conduct is reasonable); <u>cf.</u> <u>United States v. Stewart</u>, 100 Fed. Appx. 30, 31, 2004 WL 1259111, at *1 (2d Cir. 2004) (citing <u>United States v. Banks</u>, 540 U.S. 31, 36 (2003)) (considering the totality of circumstances, it was entirely reasonable for a doctor to obtain a cheek swab from the defendant at the correctional facility pursuant to a search warrant, given that the defendant was incarcerated on unrelated charges at the time the warrant was served).  Although Macomber objected to the buccal swabbings that were authorized under the warrant, he could not have lawfully prevented execution of the search warrant.  <u>In re Grand Jury Subpoenas</u>

Dated December 10, 1987, 926 F.2d 847, 854 (9th Cir. 1991); United States v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1115 n.53 (9th Cir. 2008); United States v. Choi, No. 97-00152, 1998 WL 542302, at *6 n.7 (D. Guam Feb. 9, 1998) ("The Ninth Circuit has previously stated that even if the person who is the object of the search has an objection, the person who is the subject of the search has no lawful way of preventing execution of the warrant.").

Second, the search warrant concerned a separate incident and was unrelated to Macomber's October 6 arrest.  Finally, Detective Souther did not engage in questioning related to the basis of Macomber's October 6 arrest, nor did he take actions reasonably likely to elicit an incriminating response from Macomber.  Again, his discussion with Macomber concerned the execution of the search warrant, not the crime for which Macomber had been arrested.

For the reasons discussed above, neither did Lt. Hickman's discussion with Macomber amount to an

interrogation.  Lt. Hickman initially communicated with
Macomber for the limited purpose of convincing him to
submit to the search.  Macomber initiated further
conversation about the arrest, investigative, and bail
processes and after eventually agreeing to the buccal
swabbings, expressed his desire to make a statement.[8]
At no point did Lt. Hickman or Detective Souther ask
questions or request that Macomber make a statement.
Given these circumstances, Macomber was not subjected
to an interrogation that would trigger his _Miranda_
rights.  Nevertheless, whether Detective Souther or Lt.
Hickman's communication with Macomber was an
interrogation is irrelevant because Macomber received
notification of his _Miranda_ rights on October 6.

      c.   The _Miranda_ Warnings did not Become Stale

      Even assuming, _arguendo_, that Detective Souther
and/or Lt. Hickman's contact with Macomber on October 7
regarding the buccal swabbings amounted to a custodial

---

    [8]  The Court will later discuss the implication of
this further conversation in the context of Macomber's
right to counsel.

interrogation, Macomber has not argued, and the
evidence does not suggest, that the <u>Miranda</u> warnings
issued on October 6 became stale by October 7.   "The
Supreme Court has eschewed per se rules mandating that
a suspect be re-advised of his rights in certain fixed
situations in favor of a more flexible approach
focusing on the totality of the circumstances." <u>United
States v. Rodriquez-Preciado</u>, 399 F.3d 1118, 1128 (9th
Cir. 2005) (citing <u>Wyrick v. Fields</u>, 459 U.S. 42, 48-49
(1982) (per curiam)).   Consistently therewith, the
Ninth Circuit has found statements to be admissible
after significant time has elapsed from the point
officers administered the <u>Miranda</u> warnings and
statements were made.   <u>Id.</u> at 1128-29 (citing <u>Guam v.
Dela Pena</u>, 72 F.3d 767, 770 (9th Cir. 1995) (15 hours);
<u>Puplampu v. United States</u>, 422 F.2d 870 (9th Cir. 1970)
(per curiam) (two days); <u>Maquire v. United States</u>, 396
F.2d 327, 331 (9th Cir. 1968) (three days)).

In the present case, the approximately 24 hours
that lapsed between the first <u>Miranda</u> warning and the

discussion about the buccal swabbings did not render the warning invalid.  What is more, before obtaining Macomber's statement, Detective Souther again Mirandized Macomber using an advice of rights form and Macomber waived his rights.  This occurred approximately 29 hours after Detective Souther administered Miranda warnings on October 6.  Macomber therefore received two Miranda warnings within a span of approximately 29 hours.  Accordingly, the Hawaii Supreme Court's determination that Macomber was adequately advised of his Constitutional rights on October 6, 2003 was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

   d.   The Police did not Violate Macomber's
        Right to Counsel

   Macomber alleges that the officers violated his right to counsel by questioning him without counsel

after he specifically requested his attorney.   The
Court finds that Detective Souther and Lt. Hickman did
not violate Macomber's right to counsel because they
did not interrogate him; they permitted him to speak to
counsel; and Macomber subsequently waived his right to
counsel before making his statement.   As already
discussed, Macomber requested counsel on October 6 and
while Detective Souther did not provide counsel that
day, neither was Macomber subjected to questioning or
interrogation that would have required counsel's
presence.   Once an individual invokes his right to
counsel, he "is not subject to further interrogation by
the authorities until counsel has been made available
to him, unless the accused himself initiates further
communication, exchanges, or conversations with the
police."   Edwards v. Arizona, 451 U.S. 477, 484-85
(1981).

          The execution of the search warrant was not an
interrogation, but when Macomber requested counsel on
October 7, Detective Souther nevertheless obliged.

28

Detective Souther contacted Macomber's counsel, Mr. Gregg, informed him of the warrant, and permitted Macomber to speak to Mr. Gregg by phone in his cellblock.

After having had the opportunity to speak to his attorney, Mr. Gregg, and during his discussion with Lt. Hickman about the buccal swabbings, Macomber initiated further communication with Lt. Hickman concerning the arrest, investigative, and bail processes.  Based on the communication initiated by Macomber, Detective Souther and Lt. Hickman could have subjected him to an interrogation without counsel under the Edwards exception.  They did not do so nor did they request that Macomber make a statement.  Instead, Macomber agreed to the buccal swabbings then volunteered to make a statement.

Macomber now contends that his statements were involuntary, but he fails to acknowledge or address the waiver of rights that he signed and does not argue that he did not knowingly or voluntarily waive his

29

Constitutional rights.  "For a waiver of rights to be valid it must be voluntarily, knowingly, and intelligently given."  United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998) (citing Miranda, 384 U.S. at 444).  The validity of a "'waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant.'" Id. (quoting United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1993) (citation omitted)).

Here, there is an absence of evidence to suggest that Macomber's waiver of rights was anything but voluntarily, knowingly, and intelligently given. During the course of discussing unrelated matters, Macomber volunteered to make a statement.  Detective Souther and Lt. Hickman did not request that he make a statement or coerce him into doing so.  (Answer, Ex. 3, 11/29/04 Tr. at 14:24-25; 15:1-10.)  After Detective Souther and Lt. Hickman obtained Macomber's buccal swabbings, Detective Souther advised him of his Miranda rights for the second time following his arrest on

October 6 using an advice of rights form.  (<u>Id.</u> at
10:17-19; 11:9-25; 12:1-5; 13:3-10.)  On the form,
Macomber initialed "yes" when asked if he understood
his rights; "no" when asked if he wanted a lawyer;
"yes" when asked if he was willing to answer questions
and make a statement; and "no" when asked if he wanted
a lawyer during the interview.  (<u>Id.</u> at 13:11-24;
Answer, Ex. 1.)  Lt. Hickman did not coerce Macomber
into making a statement and at no time during the
interview did Macomber request counsel.  (Answer, Ex.
3, 11/29/04 Tr. at 14:16-21; 15:11-13.)

It appearing that Macomber voluntarily,
knowingly, and intelligently waived his right to
counsel and to remain silent, Detective Souther and Lt.
Hickman did not violate his Constitutional rights in
the course of taking his incriminating statement.
Therefore, the Hawaii Supreme Court's determination
that Macomber's right to counsel was not violated
insofar as the police did not engage in substantive
questioning until he changed his mind and waived his

31

Constitutional rights was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   This Court accordingly recommends that the district court DENY Ground Two of the Amended Petition.

<u>CONCLUSION</u>

Based on the foregoing, the Court HEREBY FINDS and RECOMMENDS that Macomber's Amended Petition for Habeas Corpus, filed December 3, 2007, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, September 30, 2009.



_____
Kevin S.C. Chang
United States Magistrate Judge

<u>MACOMBER V. SWENSEN</u>, CV 07-00552 DAE-KSC; FINDINGS AND RECOMMENDATION TO DENY PETITIONER'S AMENDED HABEAS CORPUS PETITION